**NOT FOR PUBLICATION**



**FILED**
JAMES J. WALDRON, CLERK

**OCT. 28, 2011**

U.S. BANKRUPTCY COURT
NEWARK, N.J.

BY: s/ Ronnie Plasner, DEPUTY

**UNITED STATES BANKRUPTCY COURT
DISTRICT OF NEW JERSEY**

| | |
|---|---|
| In Re:<br><br>**STEEL WHEELS TRANSPORT, LLC and TEAM G LOADING, LLC,**<br><br>Debtors. | Case No. 06-15377 (DHS) (Lead Case)<br>Case No. 06-15378 (DHS) |
| **JOSEPH J. NEWMAN, CHAPTER 7 TRUSTEE FOR STEEL WHEELS TRANSPORT, LLC and TEAM G LOADING, LLC,**<br><br>Plaintiff,<br><br>v.<br><br>**ISAAC TYBERG a/k/a ISRAEL TYBERG, MORRIS TYBERG a/k/a MOSHE TYBERG, YITZMOSH LLC, ABC CORPORATIONS 1 through 10, and JOHN OR JANE DOES 1 through 10,**<br><br>Defendants. | Adv. Pro. 07-02675 (DHS)<br><br><br>**OPINION** |

**APPEARANCES:**

Trenk, DiPasquale, Webster,
Della Fera & Sodono, P.C.
Shoshana Schiff, Esq.
Joao F. Magalhaes, Esq.
347 Mt. Pleasant Avenue, Suite 300
West Orange, New Jersey 07052
*Counsel for Plaintiff-Chapter 7 Trustee*

Isaac Tyberg
123 Avenue J
Brooklyn, New York 11230
*Pro Se Defendant*

Morris Tyberg
2130 57th Street
Brooklyn, New York 11204
*Pro Se Defendant*

**THE HONORABLE DONALD H. STECKROTH, BANKRUPTCY JUDGE**

Before the Court is a motion for summary judgment by the Plaintiff and Chapter 7 Trustee Joseph J. Newman ("Trustee") against Israel Tyberg, Moshe Tyberg (together, the "Tybergs"), and Yitzmosh, LLC ("Yitzmosh"),[1] pursuant to Federal Rule of Civil Procedure 56, made applicable to this adversary proceeding by way of Federal Rule of Bankruptcy Procedure 7056.  The Trustee filed this adversary complaint seeking turnover of estate property, avoidance and recovery of certain post-petition transfers, the equitable subordination of certain claims against the estates of Steel Wheels Transport, LLC ("Steel Wheels") and Team G Loading, LLC ("Team G") (collectively, the "Debtors"), and the award of attorneys' fees.

The Trustee asserts that the Tybergs (i) willfully misappropriated property of the estate and are required to turn over possession of the same, (ii) impermissibly transferred estate property to third parties post-petition, and (iii) by flouting an Order of the Court and breaching a settlement agreement, must be equitably subordinated to the extent they hold legitimate claims against the Debtors.  The Tybergs counter-argue that they are entitled to any and all estate property in their possession.  In addition, the Defendants, specifically the Tybergs, plead ignorance concerning violations of both the Court's Order and the settlement agreement, although their arguments do not specifically address or dispute the facts pertinent to the relief sought.

For the reasons that follow, the Trustee's motion for summary judgment is granted. The Court has jurisdiction over this motion pursuant to 28 U.S.C. § 1334 and the Standing Order of Reference from the United States District Court for the District of New Jersey dated July 23,

---

[1] Also Defendants in this adversary proceeding are (i) ABC Corporations 1 through 10, and (ii) John or

3

1984. This matter is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(E) and (O). Venue is proper under 28 U.S.C. §§ 1408 and 1409. The following shall constitute the Court's findings of fact and conclusions of law as required by Federal Rule of Bankruptcy Procedure 7052.

## STATEMENT OF FACTS AND PROCEDURAL HISTORY

### I. Trustee's Statement of Facts

In or about February 2005, the Tybergs, with Ray Kalafsky ("Kalafsky"), formed Steel Wheels and Team G for the purpose of entering into the railroad industry. (Pl.'s R. 56.1 Statement of Facts ("Pl.'s Stmt. of Facts"), ¶ 1) The Trustee alleges that the Tybergs were in control of the Debtors at all times relevant to this matter. (*Id*.) (Examination of Moshe Tyberg ("Morris Dep."), 27:11-18, 37:20-38:25, June 20, 2008) (Examination of Isaac Tyberg ("Israel Dep."), 12:19-24, July 31, 2008) The Tybergs provided approximately $300,000 to $450,000 in initial capital borrowed from their father, Joseph Tyberg ("Startup Loan").[2] (Pl.'s Stmt. of Facts, ¶ 2) The Trustee alleges the funds were given or loaned to the Tybergs in their individual capacities prior to the formation of the Debtor entities. Thus, the Debtors were not obligated to repay Joseph Tyberg nor did he have any rights in the Debtors as a result of the Startup Loan.[3] (Isaac Dep., 43:2-5 and 96:25-97:4) Despite the Trustee's demands, the Tybergs failed to produce documentation supporting the amount or terms of the Startup Loan. (Pl.'s Stmt. of Facts, ¶ 5)

---

Jane Does 1 through 10.

[2] In addition, Joseph Tyberg routinely provided funds to the Tybergs to pay their living expenses. (Pl.'s Stmt. of Facts, ¶ 7)

[3] "Q[:] . . . was the understanding between you and your father that you personally would make sure he would get paid all monies he advanced? A[:] Yes." (Isaac Dep., 96:25-97:4) In addition, "Q. Could you[r] father direct that the business pay him money . . . A. No, I don't think so. I don't think it was in agreement." (*Id*. at 43:2-5)

The Trustee alleges that over an eight-month period in 2005, the Tybergs caused the Debtors to make monthly payments of roughly $5,000. to $8,000. to Joseph Tyberg in alleged satisfaction of the Startup Loan. (*Id*. at ¶ 8) (Morris Dep., 28:2-30:6; Isaac Dep., 46:21-25) In or about May 2006, Kalafsky withdrew from the business, leaving the Tybergs in sole control of the Debtors. (Pl.'s Stmt. of Facts, ¶ 11) In or about June 2006, Steel Wheels was paid approximately $500,000 on an insurance claim filed in connection with a fire on the premises. (*Id*. at ¶ 9) Despite significant damage to the premises, the Tybergs took the money, chose to make minimal repairs, and instead used the insurance funds to pay certain creditors, including approximately $120,000 to Joseph Tyberg. (*Id*. at ¶ 10) (Morris Dep., 53:1-7; Isaac Dep., 73:19-74:12)

On June 14, 2006, the corporate Debtors filed petitions for relief under chapter 11 of the Bankruptcy Code. Neither Joseph Tyberg, nor Yitzmosh, appears as a creditor on the Debtors' schedules.[4] Instead, the petitions of both Steel Wheels and Team G include each of the Tybergs as holding a separate, general unsecured claim in each case in the amount of $187,500 (four claims totaling $750,000).

On August 17, 2006, the Debtors sought to resolve the creditor disputes and the Court entered an Order conditionally dismissing the Debtors' cases ("Dismissal Order"). The Dismissal Order directed the Debtors to sell all assets to Chartwell International, Inc. ("Chartwell") for consideration of $1,250,000 to be deposited into the attorney trust account of Debtors' counsel, James S. Weiss. Among other relief, the Order provided for (i) the escrow of $791,000 of the proceeds to pay creditors and the United States Trustee, (ii) the return to the Debtors of any surplus, and (iii) the filing of a distribution report with the Court within six

---

[4] The Trustee alleges, upon information and belief, that Yitzmosh is wholly owned by Joseph Tyberg. (Pl.'s Br. in Supp. of Mot. for Summ. J., p. 1)

5

months. The Tybergs had full knowledge of the Dismissal Order. (Morris Dep., 85:6-22; Isaac Dep., 112:6-21)

On August 24, 2006, the Tybergs executed a sale agreement with Chartwell in the amount of $1,250,000 reduced by a $114,475.45 credit to Chartwell for expenses incurred, thereby reducing the pool of funds available to creditors. (Pl.'s Stmt. of Facts, ¶ 17) After the Chartwell sale, the proceeds were deposited into the escrow account for distribution. (*Id*. at ¶ 18) However, in direct contravention of the Dismissal Order, attorney Weiss made various unauthorized transfers, totaling approximately $526,700 and failed to timely file a distribution report.[5] (*Id*. at ¶¶ 19-22; Certif. of Shoshana Schiff ("Schiff Certif."), Ex. G at ¶ 31) (Certif. of James S. Weiss ("Weiss Certif."), ¶ 7) According to Mr. Weiss, the Tybergs wanted to pay creditors "as little as possible . . . so as to maximize the amount of money they would receive back at the end of payments to creditors." (*Id*. at ¶¶ 4-6) Mr. Weiss states that all actions taken and disbursements made by him were "at the direction and insistence" of the Tybergs. (*Id*. at ¶ 7) The Tybergs also instructed Mr. Weiss "not to file the distribution report until it became an issue/problem and even then, wait some more." (*Id*.)

The bulk of the misappropriated proceeds was transferred to Joseph Tyberg, Yitzmosh, and the Debtors. (Pl.'s Stmt. of Facts, ¶ 21) The Tybergs later acknowledged, in a Certification to the Court, transferring at least $428,000 to their father, Joseph Tyberg, and to Yitzmosh. (*Id*.) (Certif. of Israel Tyberg in Supp. of Mot. to Vacate Order Granting Prelim. Inj. ("Isaac Certif."), ¶¶ 58-59) In addition, the Tybergs allegedly used sale proceeds to satisfy personal debts in the amounts of $50,000 and $28,574.63 owed to Foley Inc. and Citicapital Commercial Corp., respectively. (Pl.'s Stmt. of Facts, ¶ 22) (Weiss Certif., ¶ 7) In total, the Tybergs estimate that the

---

[5] The occurrence and amount of these transfers were verified by the Trustee's accountant. (Pl.'s Stmt. of

6

Debtors received $430,000 to $535,000 of the sale proceeds. (Pl.'s Stmt. of Facts, ¶ 22) (Morris Dep., 89:20-90:13) (Certif. of Israel and Moshe Tyberg in Supp. of Mot. for Recons., ¶¶ 12, 18)

On July 3, 2007, the United States Trustee moved to reopen the Debtors' cases and compel an accounting due to the Tybergs' failure to comply with the provisions of the Dismissal Order. The Court reopened the Debtors' cases, converted them to chapter 7, and appointed the Trustee. On December 5, 2007, the Trustee initiated the instant adversary proceeding seeking to avoid post-petition transfers and recover property of the estates.[6] Soon thereafter, on January 17, 2008, the Tybergs and the Trustee entered into a settlement agreement ("Settlement Agreement") obligating the Tybergs to pay $350,000 to the Trustee. (Pl.'s Stmt. of Facts, ¶¶ 31-32) Between January and April of 2008, the Tybergs paid a total of $175,000 to the Trustee. (*Id*. at ¶ 33) However, the Tybergs failed to pay the second installment of $175,000 when due, thereby defaulting under the Settlement Agreement. (*Id*.)

As of September 19, 2011, the Tybergs have failed to cure their breach of the Settlement Agreement. Moreover, due to the misappropriation of sale proceeds, there remain outstanding claims against the Debtors' estates in the amount of $269,567.86. (*Id*. at ¶¶ 34-35) The Trustee requests judgment in the minimum amount of $351,700, exclusive of attorneys' fees, pursuant to Federal Rule of Bankruptcy Procedure 7008(b).[7] (Pl.'s Br. in Supp. of Summ. J., p. 29)

---

Facts, ¶ 19-22; Schiff Certif., Ex. G at ¶ 31)

[6] On the same date, the Court entered an Order to Show Cause granting temporary restraints and enjoining the Defendants from dissipating, transferring, or encumbering any of their assets. The Court entered subsequent Orders continuing to restrain and enjoin the Defendants on each of January 2 and January 14, 2008.

[7] To determine his minimum recovery the Trustee subtracts $175,000, the amount paid under the Settlement Agreement, from $526,700, the alleged amount misappropriated by the Tybergs. (Pl.'s Br. in Supp. of Summ. J., p. 29)

## II.     Defendants' Additional and Disputed Facts[8]

The Tybergs argue that Joseph Tyberg and Yitzmosh were "the first creditors of the business" and therefore, they argue the Debtors were obligated to repay the Startup Loan. (Pl.'s Resp. in Supp. of Summ. J., Ex. A) In their September 1, 2011 e-mail to the Trustee's counsel, the Tybergs produced for the first time what purports to be a promissory note, dated February 17, 2005, executed by the Debtors in favor of "Joseph Tyberg as Yitzmosh LLC." (*Id.*) Further, the Tybergs assert that Mr. Weiss, the Debtors' former counsel, is solely responsible for any misappropriation of sale proceeds. (*Id.*) Lastly, the Tybergs contend that, pursuant to the Dismissal Order, the "Debtors were entitled to receive . . . $459,000.," of the sale proceeds. (*Id.*) (Isaac Certif., ¶¶ 58-59)

## **DISCUSSION**

## I.      Summary Judgment Standard

A court may grant summary judgment under Federal Rule of Civil Procedure 56(c), made applicable to adversary proceedings pursuant to Federal Rule of Bankruptcy Procedure 7056, "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Id.*  At the summary judgment stage, the role of the court "is not to weigh evidence, but to determine whether there is a genuine issue for trial." *Knauss v. Dwek*, 289 F. Supp. 2d 546, 549 (D.N.J. 2003) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986)).  The court must construe facts and inferences in a light

---

[8] The Defendants did not file formal opposition with the Court.  On September 1, 2011, at 5:00 p.m., the Tybergs delivered to the Trustee's counsel, via e-mail, a letter refuting the allegations set forth in the motion.  The letter was not filed with the Court but the Trustee's counsel provided the Court with a copy of the opposition.  The Court took into consideration the arguments set forth in their non-compliant opposition as well as their statements at

most favorable to the non-moving party. *See Am. Marine Rail NJ, LLC v. City of Bayonne*, 289 F. Supp. 2d 569, 578 (D.N.J. 2003) (citing *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587-88 (1986)). "Only evidence admissible at trial may be used to test a summary judgment motion. Thus, evidence whose foundation is deficient must be excluded from consideration." *Williams v. Borough of West Chester, Pa.*, 891 F.2d 458, 471 (3d Cir. 1989) (citations omitted).

The moving party must make an initial showing that there is no genuine issue of material fact. *See Knauss*, 289 F. Supp. 2d at 549 (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)). The burden then shifts to the non-moving party to "'make a showing sufficient to establish the existence of [every] element essential to the party's case, and on which that party will bear the burden of proof at trial.'" *Cardenas v. Massey*, 269 F.3d 251, 254-55 (3d Cir. 2001) (questioned on other grounds) (quoting *Celotex Corp.*, 477 U.S. at 322). The "mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Anderson*, 477 U.S. at 247-48 (emphasis in original). An issue of fact is "genuine" if a reasonable juror could return a verdict for the non-moving party. *See id.* at 248. Furthermore, a material fact is determined by the substantive law at issue. *See Crane v. Yurick*, 287 F. Supp. 2d 553, 556 (D.N.J. 2003) (citing *Anderson*, 477 U.S. at 248). A fact is "material" if it might affect the outcome of the suit under governing law. *Id.* Disputes over irrelevant or unnecessary facts are insufficient to defeat a motion for summary judgment. *Anderson*, 477 U.S. at 248 (citation omitted).

---

argument on the Trustee's motion.

However, even if material facts remain disputed, summary judgment may be proper if, after all inferences are drawn in the non-moving party's favor, the moving party is entitled to judgment as a matter of law. *Id.* at 248-50. Such a judgment is appropriate "as a matter of law" when the non-moving party has failed to make an adequate showing on an essential element of his or her case, as to which he or she has the burden of proof. *See Celotex Corp.*, 477 U.S. at 322-23. When one party moves the court for summary judgment, Federal Rules of Civil Procedure 54(c) and 56, taken together, permit the court to enter summary judgment on behalf of the non-movant, even if the non-movant has not filed a cross-motion for summary judgment. *See Peiffer v. Lebanon Sch. Dist.*, 673 F. Supp. 147, 151-52 (M.D. Pa. 1987) (citation omitted). On the other hand, a court must deny a motion for summary judgment when a genuine issue of material fact remains to be tried, or where the moving party is not entitled to a judgment as a matter of law.

### II.  Turnover

The Trustee asserts his right to gain possession and control of the allegedly misappropriated property. At the commencement of a bankruptcy case, section 541(a) creates a bankruptcy estate for the benefit of creditors and subject to administration by the Trustee. 11 U.S.C. § 541(a). Broadly defined, the estate consists of "all legal and equitable interests of the debtor in property." 11 U.S.C. § 541(a)(1). Further, the estate includes all "[p]roceeds . . . or profits of or from property of the estate[.]" 11 U.S.C. § 541(a)(6). Section 542(a) allows the Trustee to compel turnover of estate property in the possession, custody, or control of third parties. 11 U.S.C. § 542(a). A section 542(a) claim requires the Trustee to carry the burden of proving,

10

> (1) the property is in the possession, custody or control of another entity;
> (2) the property can be used in accordance with the provisions of section 363; and
> (3) the property has more than inconsequential value to the debtor's estate.

*Id.*; *see United States v. Whiting Pools*, 462 U.S. 198, 206 (1983); *In re Am. Tissue, Inc.*, No. 01-10370, 2007 Bankr. Lexis 4004, at *21 (Bankr. D. Del. Nov. 20, 2007).

Here, the relevant facts are undisputed and the elements for turnover are satisfied. The Tybergs' belief that they are individually entitled to the property is wholly unsupported by the record. As a threshold matter, the funds at issue are proceeds from the sale of estate assets to Chartwell and thus, constitute property of the estate under section 541(a)(6). As the result of several unauthorized transfers, some $526,700 of those proceeds went into the custody or control of the non-debtor Defendants. Further, the proceeds are subject to administration by the Trustee under section 363. Lastly, the recovery sought will satisfy any extant claims against the Debtors' estates and therefore, the property has value of consequence to the estates. Thus, the Trustee has met his burden and the claim for turnover is granted.

### III. Post-Petition Transfers

The Trustee seeks avoidance of various post-petition transfers caused by the Tybergs. Section 549 provides the Trustee with the power to avoid post-petition transfers that are not authorized by the Bankruptcy Code or by the Bankruptcy Court. 11 U.S.C. § 549(a); *see Wasserman v. Bressman,* 327 F.3d 229, 235 (3d Cir. 2003). Section 549 states, in pertinent part,

> (a) Except as provided in subsection (b) or (c) of this section, the trustee may avoid a transfer of property of the estate —
> (1) that occurs after the commencement of the case; and

11

>   (2)(A) that is authorized only under section 303(f) or 542(c) of this title; or
>   (B) that is not authorized under this title or by the court.

11 U.S.C. § 549(a).

If a transfer is avoidable under section 549(a), then, section 550(a) allows the Trustee to recover the property at issue or its equivalent in value from the initial or subsequent transferee. 11 U.S.C. § 550(a); *see In re PSA, Inc.,* 335 B.R. 580, 584 (Bankr. D. Del. 2005). The purpose of section 549 "is to allow the trustee to avoid those post-petition transfers which deplete the estate while providing limited protection to transferees who deal with the debtor." *Id.*

The Trustee bears the burden of proving the elements under sections 549 and 550. *Id.* To avoid a transfer, the Trustee must demonstrate that the following occurred: "(1) a transfer; (2) of property of the bankruptcy estate; (3) that occurs after the commencement of the bankruptcy case; and (4) that was not authorized by any provision of the Bankruptcy Code or by order of the bankruptcy court." *In re Forman Enterprises, Inc.,* 281 B.R. 600, 611 (Bankr. W.D. Pa. 2002); *see PSA, Inc.,* 335 B.R. at 585.

Here, again, the facts are well-established, undisputed, and satisfy the elements for avoiding a post-petition transfer pursuant to section 549. As noted above, the proceeds of the Chartwell sale are property of the Debtors' estates. The Tybergs admitted to transferring significant sums to, among others, Joseph Tyberg and Yitzmosh. Additionally, evidence submitted by the Trustee shows, and the Tybergs' testimony confirms, that the transfers occurred post-petition. Finally, the transfers to unscheduled, non-priority, purported creditors offend the priority scheme of the Bankruptcy Code and violate the express terms of the Dismissal Order. Thus, pursuant to section 550(a), the Trustee is entitled to recover the transferred proceeds or their equivalent in value.

**IV.  Equitable Subordination**

Assuming, *arguendo*, that the Defendants hold legitimate claims against the Debtors' estates, the Trustee requests such claims be equitably subordinated pursuant to section 510(c). Under principles of equitable subordination, after notice and a hearing, the Court may,

> subordinate for purposes of distribution all or part of an allowed claim to all or part of another allowed claim or all or part of an allowed interest to all or part of another allowed interest.

11 U.S.C. § 510(c)(1).

Section 510(c) does not codify the elements of an equitable subordination claim. Rather, it directs the Court to apply judicially developed principles of equitable subordination to the equities at hand. *See Citicorp Venture Capital, Ltd. v. Comm. of Creditors Holding Unsecured Claims*, 323 F.3d 228, 234 (3d Cir. 2003); *see also* 124 Cong. Rec. 32,398 (1978) (statement of co-sponsor Rep. Edwards); 124 Cong. Rec. 33,998 (statement of co-sponsor Sen. DeConcini). Case law endows bankruptcy courts with "the power to sift the circumstances surrounding any claim to see that injustice or unfairness is not done in administration of the bankrupt estate." *Pepper v. Litton*, 308 U.S. 295, 307-8 (1939). The doctrine is remedial in nature. Thus, a claim may be subordinated only to the extent necessary to alleviate the harm or injustice inflicted. *In re Mobile Steel Co.*, 563 F.2d 692 (5th Cir. 1977).

Before subordinating a claim under section 510(c), a court must determine that (i) the claimant engaged in some type of inequitable conduct, (ii) the misconduct resulted in injury to other creditors or conferred an unfair advantage on the claimant, and (iii) subordination of the claim is not inconsistent with the provisions of the Bankruptcy Code. *In re Epic Capital Corp.*, 307 B.R. 767, 772 (Bankr. D. Del. 2004) (citing *Citicorp Venture Capital Ltd.*, 160 F.3d at 986); *see United States v. Noland*, 517 U.S. 535, 538-39 (1996). The Third Circuit "recognizes a

13

claim of 'no-fault' equitable subordination," such that, "creditor misconduct is not a prerequisite for equitable subordination." *In re Burden*, 917 F.2d 115, 120-21 (3d Cir. 1990); *In re Montgomery Ward Holding Corp.*, 272 B.R. 836, 845 (Bankr. D. Del. 2001). Accordingly, clear evidence of fraud or malicious intent need not be shown. Lastly, the burden of proving the above falls on the party seeking the equitable subordination of claims. *In re Papercraft Corp.*, 211 B.R. 813, 823 (Bankr. W.D. Pa. 1997).

Courts routinely subject transactions by and among insiders and fiduciaries to more exacting review. *See Id*. An insider must prove the transaction was in good faith and demonstrate its "inherent fairness from the viewpoint of the corporation and those with interests therein." *Pepper v. Litton,* 308 U.S. at 306. Broadly defined under the Code, "insiders" include officers, directors, persons in control of a debtor corporation, or a relative thereof. 11 U.S.C. § 101(31)(B)(i)-(iii) and (vi).

The particular circumstances of this case compel the Court to impose extraordinary relief and subordinate the legitimate claims, if any exist, of the Defendants. While the Third Circuit does not require a showing of misconduct to justify equitable subordination, the record is replete with misdeeds sufficient to motivate the outcome here. Significantly, the Tybergs admit to transferring at least $428,000 of the proceeds directly to their father, Joseph Tyberg, and Yitzmosh, arguing, without legal support, that the Debtors were obligated to do so under the Startup Loan and that Joseph Tyberg was a priority creditor. However, neither Yitzmosh nor Joseph Tyberg was listed as a creditor on the Debtors' petitions or have advanced such arguments before this Court. Consequently, neither is entitled to distribution, let alone priority. More importantly, neither was due or authorized payment under the Dismissal Order. Thus, the transfers put the Tybergs in breach of the Court's Order, if nothing else.

The Tybergs' blatant disregard of the terms of the Dismissal Order is troubling but illustrative of their conduct throughout the proceedings. Though the Tybergs assert an entitlement to at least $459,000 of sale proceeds pursuant to the Order, their position has no basis in fact.[9] The Dismissal Order clearly provides that the Debtors will receive any surplus. A surplus was not a fixed amount, but contingent upon the satisfaction of certain creditor claims, the costs of administration, and the myriad eventualities that impact the execution of the Order and reduce the Debtors potential recovery. In addition, the Tybergs' calculation ignores the $114,475.45 credit given to Chartwell under the sale agreement. This aside, both Isaac and Morris Tyberg testified to misappropriating amounts well in excess of $459,000. Thus, even if their argument were made in good faith, ample grounds for equitable subordination remain. Finally, the Tybergs again failed to honor their obligations by defaulting on a $175,000 payment due under the Settlement Agreement and to date, they have made no effort to cure the breach.

In sum, the Tybergs engaged in a persistent course of inequitable conduct including willfully breaching the Dismissal Order and the Settlement Agreement. They blatantly diverted estate assets to settle personal obligations, improve the position of favored creditors, and frustrate the recovery of legitimate claimants. Under these circumstances, equitable subordination is consistent with the provisions of the Bankruptcy Code. The Court is obliged to follow the Code's priority scheme and ensure the equitable distribution of proceeds. As a result, the Defendants must be precluded "from participating in the distribution of the [Debtors'] estate[s] at the same level as the creditors . . . whom [their] conduct has injured." *In re Winstar Communications Inc.*, No. 06-147-JJF, 2007 U.S. Dist. Lexis 31137, at *14-15 (D. Del. April 26, 2007).

---

[9] Presumably, the Tybergs arrived at this amount by subtracting $791,000, the sum of disbursements

15

As a final note, the Defendants, as either persons in control of the Debtors or relatives thereof, are insiders within the bounds of section 101. *See* 11 U.S.C. § 101(31). Accordingly, they are duty-bound to act in good faith and in the interest of the Debtor entities and other stakeholders. *See Pepper v. Litton*, 308 U.S. at 306. It strains credulity to suggest that the knowing diversion of corporate assets, violation of a Court Order, or breach of a settlement agreement is consistent with the Tybergs' fiduciary charge, let alone inherently fair to legitimate creditors.[10] *See id.* Thus, to the extent the Defendants hold claims against the estates, such claims are subordinate to the unsatisfied claims of all creditors.

### **CONCLUSION**

There are no genuine issues of material fact. Rather, the Trustee has alleged and the Tybergs have acknowledged all facts required to award the desired relief. Accordingly, the Trustee is entitled to summary judgment (i) compelling turnover of the misappropriated property as well as avoiding certain post-petition transfers and awarding recovery of the same (or its equivalent in value) not to exceed $351,700, (ii) equitably subordinating any claims held by the Defendants, and (iii) awarding the Trustee reasonable attorneys' fees.

An Order in conformance with this Opinion has been entered by the Court and a copy is attached hereto.

*s/    Donald H. Steckroth*

DONALD H. STECKROTH
UNITED STATES BANKRUPTCY JUDGE

Dated: October 28, 2011

---

ordered by the Court in the Dismissal Order, from $1,250,000, the price paid by Chartwell for the Debtors' assets.

[10] The Trustee alleges a statutory breach of fiduciary duties pursuant to N.J.S.A. 14A:6-14(1). However, a favorable ruling on this count will not enhance the recovery in this case. Thus, the Court declines to consider the provision in its analysis.